IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CURTIS BERRING,

    Petitioner,

v.                                        CASE NO. 1:08-cv-242-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  The Petition stems from Petitioner's 2006 Alachua County jury-trial conviction for robbery by use of force, violence, assault, or putting in fear, for which he received a 15-year sentence as a prison releasee reoffender.  Respondent filed a response and an appendix with relevant portions of the state-court record, and Petitioner filed a reply.  Docs. 13, 17[1].  Upon due consideration of the Petition, the Response, and the state-court record, the undersigned recommends that the Petition be denied.[2]

---

[1] Petitioner's reply, Doc. 17, is styled "Objections to Magistrate's Report and Recommendation," but no report has previously issued in this case.

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

## State-Court Proceedings

Petitioner was charged by information with committing a robbery of a Winn-Dixie Store on January 21, 2006.[3] Petitioner conceded, through counsel, that he took packages of meat valued at $27.16 from the store, and that he did so with the intent of depriving the store of the property. Petitioner consented to his counsel's presenting a defense that Petitioner was guilty of lesser-included offenses of resisting a merchant and petit theft. *See* Exh. B. (trial transcript) at 6-8. Counsel sought to establish that although Petitioner used force to try and take his bicycle away from a store employee following the theft, the use of force was not connected to the theft. *See id*. at 57-58.

---

[3] Pursuant to Fla. Stat. § 812.13 (2006):

(1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
. . .
(2)(c) If in the course of committing the robbery the offender carried no firearm, deadly weapon, or other weapon, then the robbery is a felony of the second degree.
. . .
(3)(a) An act shall be deemed "in the course of committing the robbery" if it occurs in an attempt to commit robbery or in flight after the attempt or commission.

    (b) An act shall be deemed "in the course of the taking" if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.

The relevant evidence on this point may be summarized as follows.  Petitioner concealed two packages of meat in his clothing, and while exiting the store he triggered an anti-theft alarm.  Winn-Dixie employee Jonathan Williams intercepted Petitioner outside the store as Petitioner was attempting to retrieve and mount his bicycle, which had been left near the exit door.  Petitioner initially denied that he had taken anything, but Williams could see a package protruding from Petitioner's shirt.  Williams asked Petitioner to go inside the store, and Petitioner refused.  Petitioner tried to pedal the bicycle away.  Williams grabbed the bicycle, and Petitioner tried to push Williams' hands away.  When those efforts proved unsuccessful, Petitioner dismounted the bike and tried to dislodge it from Williams' grip by shaking it back and forth.  As the two men struggled over the bike, one of the packages of meat fell out of Petitioner's pants.  Petitioner told Williams "that's the sausage that I stole.  You can let me go."  Petitioner denied that he had anything else.  The bicycle fell to the ground, and as Petitioner tried to reach the bicycle Williams' grabbed Petitioner and put him on the ground, where Petitioner continued to struggle.  Williams' tried to call 911 on a cell phone, but the phone was knocked or fell out of his hand.  Williams retrieved the phone and completed the call to 911.  Williams denied being placed in fear or feeling assaulted, but felt that Petitioner was using force during the altercation. Exh. B at 24-40.

Winn-Dixie employee Jarrod Behrens was working in the back of the store when a "Code 9" announcement was made, indicating a shoplifter.  Behrens went to the front of the store and observed Williams fighting with Petitioner.  Behrens testified that they "were wrestling all around" and that Petitioner swung at Williams but missed.   Behrens assisted Williams in restraining Petitioner; Petitioner continued to struggle.   Another

package of meat was found concealed in Petitioner's pants.  Police arrived and arrested Petitioner.  Exh. B. at 41-55.

At the close of the State's case-in-chief, defense counsel moved for a judgment of acquittal, arguing that the evidence was insufficient to establish the elements of robbery because the only use of force involved Petitioner's efforts to take the bicycle away from Williams, and not to keep the merchandise. The trial court concluded that reasonable people could differ on the issue of force, and denied the motion.  *Id*. at 60. The defense rested without putting on any evidence.  Although the verdict form permitted the jury to find petitioner guilty of the lesser included offenses of petit theft or resisting a merchant, the jury returned a verdict of guilty of robbery as charged in the information.  *Id*. at 104.

Petitioner, through counsel, filed a motion for new trial, arguing that the verdict was contrary to law and the weight of the evidence; the motion was denied.  Exh. E. Petitioner did not initially appeal, but filed a motion pursuant to Fla. R. Crim. P. 3.850. Exh. M.  The court denied the motion because Petitioner's claims should have been raised on direct appeal.  Exh. N.  Petitioner subsequently obtained leave to file a belated direct appeal.  Exh. F, H.  As grounds, Petitioner argued that the trial court erred in denying his motion for judgment of acquittal, that the State's closing argument misled the jury regarding the force necessary to convict him of robbery, and that the conviction was manifestly contrary to the weight of the evidence.  Exh. I.  The First DCA affirmed *per curiam* without written opinion.  Exh.  L.

The instant federal habeas petition followed.  Petitioner asserts the same three claims as raised in his belated direct appeal.  Doc. 1.  Respondent concedes that the

petition is timely.  Respondent contends that Petitioner's first claim is unexhausted and that Petitioner in any event is not entitled to habeas relief on the merits of the claim, that Petitioner's second claim should be denied on the merits, and that Petitioner's third claim is not cognizable on federal habeas review.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*. at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation

has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## Section 2254 Standard of Review

For claims that are properly exhausted, there are limitations on this Court's habeas review of a state conviction. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir.

2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

### (1) Denial of Motion for Judgment of Acquittal

Respondent contends that this claim is unexhausted, and is now procedurally defaulted, because Petitioner never specifically or by implication raised this claim as a federal constitutional issue in state court.  Doc. 13.  Petitioner does not dispute this assertion.  *See* Doc. 17.   Petitioner's appellate counsel cited only state cases in support of the appellate arguments, and there is no mention in the brief of any federal constitutional claim with respect to this issue.  *See* Exh. I.  On the basis of this record, the Court concludes that Petitioner's claim regarding the trial court's denial of his motion for judgment of acquittal was not exhausted as a federal constitutional claim in the state courts.  *See Pearson v. Sec. Dept. Corr.*, 273 Fed.Appx. 847 (11th Cir. 2008) (rejecting similar sufficiency-of-the-evidence claim as unexhausted where Petitioner's state-court filings cited exclusively to state cases, and all of his substantive arguments addressed Florida law).  Because Petitioner clearly would be barred from now pursuing this claim in state court, it is procedurally defaulted and foreclosed from federal review absent a showing of cause and prejudice or a fundamental miscarriage of justice.  Petitioner makes no claim that he can show cause and prejudice for the default, and there is nothing in the record that suggests that a fundamental miscarriage of justice would result if the Court does not consider the claim.

Even if Petitioner had exhausted this claim, he has not shown that the state court's rejection of the claim provides any basis for federal habeas review.  When reviewing a claim of the sufficiency of the evidence on federal habeas review, this Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "In determining whether the facts of a particular case satisfy the *Jackson* standard, it is necessary to refer to the essential elements of the crimes as defined by state law." *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) (citations omitted).

In this case, the essential element at issue is whether Petitioner committed a robbery by "force." *See* Fla. Stat. § 812.13(1) (robbery occurs when in the course of the taking there is the use of force, violence, assault *or* putting in fear). "In the course of the taking" is defined as an act that occurs "either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events." *Id*. The statute thus "incorporates the modern view that a robbery can be proven by evidence of force used to elude the victim or to retain the victim's property once it has been taken." *Messina v. State*, 728 So.2d 818, 819 (1st DCA 1999). In *Messina*, the court found the evidence sufficient to sustain a robbery conviction where the defendant did not use force in taking the victim's purse from a shopping cart. The victim chased the defendant to his car, and then sat on the hood of the car in an effort to prevent the defendant from driving away. The defendant instead started and stopped the car several times, eventually causing the victim to fall off. The court concluded that the "force was used as a part of a continuous set of events beginning with the removal of the victim's purse from the shopping cart and ending with the victim's fall from the hood of the defendant's car." *Messina*, 728 So.2d at 819. The court observed that the common feature in cases holding the same is that "in each case there was no break in the chain of events between the taking and the use of force." *Id*. (citing *Lemus v. State*, 641 So.2d 177 (Fla. 5th DCA 1994) (force used to resist a

security guard was sufficient to support a conviction for robbery, even though the defendant used no force to take the items from the store); *Santilli v. State*, 570 So.2d 400 (Fla. 5th DCA 1990) (force used during the defendant's attempted flight from the scene of a shoplifting was sufficient to elevate the shoplifting to a robbery); *Rumph v. State*, 544 So.2d 1150 (Fla. 5th DCA 1989) (force used to shove a store clerk out of the way was sufficient to sustain a conviction for robbery).

Viewing the evidence adduced at Petitioner's trial in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that Petitioner used force in connection with the taking of the meat products from Winn-Dixie. The evidence was sufficient to conclude that the struggle with the store employees after Petitioner left the store and attempted to flee on his bicycle constituted a use of force that was part of the chain of events that began when Petitioner stole the products. Petitioner has failed to show that the state court's rejection of this claim was contrary to or an unreasonable application of federal law.

### (2) Improper Closing Argument

Petitioner contends that the prosecutor misstated the law regarding what constitutes "resisting" with respect to the lesser-included offense of resisting a retail merchant.  Doc. 1; *see* Exh. I (appellate brief).  In addressing Petitioner's concession to having resisted a merchant, the prosecutor referred to the evidence regarding the struggle with the Winn-Dixie employees and argued that Petitioner's acts amounted to robbery by force, and not merely resisting.  The prosecutor stated:

> The defense is urging you simply convict him of resisting a merchant, resisting detainment. But when you look to the element of that crime, the judge will tell you that it's simply resisting. There's no

> requirement for resisting detainment that there was ever any force, ever any violence, anything like that. It's simple resistance.
>
> What that is really contemplating, is, "Sir, come back in. I think you stole something. We just need to square it away. Come back inside. Come back inside." He turns and runs. He's gone. No violence was ever used. No force ever got injected into the situation. But he resisted the merchant's efforts to detain him to determine what happened.
>
> That's resisting detainment. Struggling around with the bike so you can get away with the other meat that hasn't fallen out in the struggle, so you can get away with the crime, rolling around on the ground, still struggling, taking a swing at somebody, that's force. That's violence.

Exh. B. at 81-82.

On direct appeal, Petitioner argued that this statement "left the jury with the impression that any physical act was enough to preclude convicting Mr. Berring of resisting a merchant, and instead required convicting him of robbery." Exh. I at 17.[4]

It is well-settled that improper jury argument by the prosecution violates a defendant's constitutional right to a fair trial in some circumstances. *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th Cir. 1987). The Court applies a two-step process in reviewing such a claim: (1) the Court considers whether the argument was improper; and (2) whether any improper argument was so prejudicial as to render the trial fundamentally unfair. *Id*. at 1526. Thus, "'[t]he

---

[4] It does not appear that Petitioner asserted this claim on direct appeal as a federal constitutional issue. Respondent does not assert exhaustion as a bar to consideration of this claim. Even if the claim is unexhausted, it is clear that it is due to be denied on the merits. *See* 28 U.S.C § 2254 (habeas petition may be denied on the merits, notwithstanding failure to exhaust).

relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. at 1526-27 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). A trial is fundamentally unfair if there is a reasonable probability that but for the prosecutor's improper remarks, the outcome of the trial would have been different. *Williams v. Kemp*, 846 F2d 1276, 1283 (11th Cir. 1988).

Viewing the statement in the context of the closing argument as a whole, the Court concludes that it was a reasonable response to Petitioner's defense argument, which opened the door to the prosecutor to argue that the jury could infer from the evidence that Petitioner's acts amounted to "force" against the employees rather than merely "resisting" detention. Moreover, the trial court instructed the jury on the elements of robbery, and explained the level of physical force necessary to satisfy that element. *See* Exh. B at 92 (taking must be by use of force "so as to overcome the resistance of the victim," and there must be "some resistance [by the victim] to make the taking one done by force or violence."). The court instructed the jury that it could find Petitioner guilty of the lesser-included offense of resisting a merchant by finding that he "while committing or after committing a theft of property, resisted the reasonable effort of a merchant or merchant's employee to recover the property." Exh. B. at 95. Petitioner has made no showing that these instructions were insufficient to resolve any confusion created by the prosecutor's comments.

Viewing the record as a whole, the Court concludes that the comment was neither improper, nor has Petitioner shown that the comment rendered his trial fundamentally unfair. Petitioner has failed to show that the state court's rejection of this claim was

contrary to or an unreasonable application of federal law.

### (3) Denial of Motion for New Trial

Petitioner contends that the trial court erred in denying his motion for new trial on the ground that the conviction was against the weight of the evidence. For the reasons explained above, the Court concludes that the evidence was sufficient to support the conviction as a matter of federal due process. As Respondent points out, a Florida trial court's authority to grant a new trial as against the weight of the evidence is derived from state law. *See* Fla. R. Crim. P. 3.600(a)(2). Where the evidence is sufficient to support a conviction as a matter of federal due process, a claim that the verdict was against the weight of the evidence presents an issue of state law that is not cognizable on federal habeas review. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) (federal habeas court has no power to grant relief because it finds that the state conviction is against the weight of the evidence). Accordingly, the Court concludes that this issue is not cognizable.

### Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2. That a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 21st day of February 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.